UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA L.,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,<br>　　　　　Defendant. | Case No. 8:23-cv-00152-PD<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING AGENCY DECISION** |

Plaintiff challenges the denial of her application for Disability Insurance Benefits. For the reasons stated below, the decision of the Administrative Law Judge is affirmed.

**I.   Pertinent Procedural History and Disputed Issues**

On July 10, 2020, Plaintiff protectively filed an application for Disability Insurance Benefits alleging that she had been disabled since May 25, 2014. [Administrative Record ("AR") AR 15, 67-68, 237-38.][1] Plaintiff's

---

[1] The Administrative Record is Docket Numbers 7-1 through 7-30. Plaintiff's Opening Brief is CM/ECF Docket Number 11, the Commissioner's Brief is at Docket Number 14, and Plaintiff's Reply is at Docket Number 15.

applications were denied administratively on November 12, 2020, and upon reconsideration on February 2, 2021. [AR 15.] Plaintiff requested a hearing, which was held on January 26, 2022, by telephone due to the COVID-19 Pandemic before an Administrative Law Judge ("ALJ"). Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). [*Id.*] On February 8, 2022, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act ("SSA") from the alleged onset date through the date last insured ("DLI"), which was December 31, 2019. [AR 67.] On November 22, 2022, the Appeal's council denied Plaintiff's request for review, rendering the ALJ's Decision the final decision of the Commissioner. [AR 1-6.]

The ALJ followed the requisite five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activities since May 25, 2014, the alleged onset date, through the date of last insured, December 31, 2019. [AR 17 ¶ 7.]

At step two, the ALJ found that Plaintiff has the following severe impairments:

> degenerative disc disease of the lumbar spine and cervical spine, and osteoarthritis of the hips.

[AR 18 ¶ 2.] The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. [AR 18 ¶ 3.]

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the applicable regulations. [AR 19 ¶ 3.]

Before proceeding to step four, the ALJ determined that Plaintiff retains the Residual Functional Capacity ("RFC") to perform light work as defined in the regulations, with the following limitations:

> She was able to occasionally do all postural activities (climb, balance, stoop, kneel, crouch, and crawl). She was able to perform no more than occasional overhead reaching bilaterally.

[AR 20 ¶ 1.]

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. [AR 28 ¶¶ 4, 5; 29 ¶¶ 1, 2.] At step five, the ALJ found that, upon considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, specifically, in the occupations of counter supervisor, marker, and booth cashier. [AR 29 ¶ 7; 30 ¶¶ 2, 3.]

Plaintiff raises one issue: whether the ALJ properly considered Plaintiff's subjective symptom testimony. [Dkt. No. 11 at 2.]

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational

interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

### III. Discussion

#### A. The ALJ's Assessment of Plaintiff's Subjective Symptom Testimony

##### 1. Relevant Law

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of credibility evaluation." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Courts,

therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

An ALJ may consider a claimant's conservative treatment when evaluating credibility, particularly when the claimant "responded favorably" to minimal treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) (same). Proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Mojarro v. Berryhill*, 746 F. App'x 672 (9th Cir. 2018) (same). An ALJ may also rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and the claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) (same).

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations. However, this factor "cannot form the sole basis" for discounting subjective symptom testimony. *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

Even if an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and *ultimate credibility determination* were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted).

### 2. Analysis

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons for discounting her subjective complaints of pain. [*See* Dkt. Nos. 11, 15.] Plaintiff alleged disability due to a variety of physical

5

impairments, including herniated discs in both her neck and her back, narrowing of joint spaces in feet caused by trauma, sprained pelvis, chronic pain, osteoarthritis, and spondylosis of the lumbar region. [AR 248-258.] As pertinent to the disputed issue, Plaintiff testified that she was in two car accidents – one in 2014 and the other in 2016. [AR 51.] Plaintiff further testified that she could lift up to five pounds and walk up to 20 minutes prior to her DLI. [AR 55-56.] Plaintiff also testified that during the relevant period of time, she would spend most of the day resting and could only be active for about half an hour before needing to rest again for 20 minutes to an hour. [AR 58.] Plaintiff stated that she was unable to do household chores and required assistance from her husband and children. [AR 57.]

### i. Inconsistency with the Medical Evidence and Daily Activities

Plaintiff primarily argues that there is sufficient medical evidence in the record to support her complaints of pain. [Dkt. No. 11 at 3-9.] The ALJ reviewed the record and found that Plaintiff's medically determinable impairments could reasonably be expected to cause some – but not all – of the alleged symptoms and severity, but Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record." [AR 20.]

First, the ALJ detailed the medical record and noted that the medical evidence prior to the DLI supports a finding that Plaintiff's degenerative disc disease of the lumbar and cervical spine as well as her osteoarthritis of the hips support *some* physical limitations in her ability to work. [AR 26.] The ALJ therefore emphasized that the RFC included limitations to accommodate these impairments. [*Id.*] Nonetheless, the ALJ explained that the medical evidence "does not demonstrate that greater limitations were necessary" and thus did not fully support Plaintiff's testimony because "the medical evidence

as a whole is not consistent with the extent of the symptoms and limitations alleged." [*See* AR 20-26.] The ALJ then highlighted several parts of the medical record. Notably, apart from some tenderness and decreased range of motion in the treatment notes, Plaintiff's doctors "often observed [her] to have normal range of motion, normal strength, and normal sensation." [AR 26-27.] The ALJ further noted that Plaintiff's doctors did not document any abnormalities in her gait, nor did they prescribe her an assistive device such as a cane or a walker. [AR 27.] Additionally, the ALJ emphasized that Plaintiff's doctors did not indicate that – prior to the DLI – her impairments could reasonably be expected to result in workplace limitations. [*Id.*] Thus, the ALJ stated that "the absence of treating or examining source opinions supportive of total debility, or of limitations greater than those contained in the [RFC], suggest that these sources did not believe such opinion to be warranted prior to the [DLI]." [*Id.*] Plaintiff contends that this is not a clear and convincing reason to discount her testimony, and points to a functional assessment which noted she could not sit, stand, or walk for more than two hours, was limited to occasionally carrying 10 pounds, would be off-task 25% or more of the day, and potentially absent from work 3 days a month. [Dkt. No. 11 at 8 (citing AR 5073-75).] While Plaintiff may have a different interpretation of the medical evidence, she does not show that the ALJ's interpretation was error. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."); *Ryan*, 528 F.3d at 1198 (same).

      Plaintiff further argues that inconsistency with the objective medical evidence may not be the *sole* basis upon which an ALJ may discount a plaintiff's subjective complaints of pain. *See Burch*, 400 F.3d at 681. While

Plaintiff is correct, here the ALJ provided another reason for discounting Plaintiff's testimony. The ALJ explained that Plaintiff's daily activities "tend to suggest she was capable of more activity" than alleged. [AR 27.] The ALJ noted that even after the first car accident in 2014, Plaintiff reported that she still "exercises regularly." [AR 27 (citing Ex. 2F/165).] Similarly, in 2016 Plaintiff reported that despite having been more "aggressive" in her exercise routine pre-accident, she nonetheless still was able to run on a treadmill at 5.5 miles per hour at a 10-to-15-degree incline. [AR 27 (citing Ex. 2F/482).] In February 2017, a few months after the second car accident, Plaintiff reported she had been walking five to nine miles a day. [AR 27 (citing Ex. 4F/20).] In May 2018, again Plaintiff stated that she was doing core exercises, and was swimming and walking. [AR 27 (citing Ex. 6F/53).] Plaintiff also reported activities such as gardening and caring for her five children. [AR 27 (citing 2F/ 165, 201).] Consequently, the ALJ reasoned Plaintiff's daily activities indicate that "limitations regarding standing or walking are not necessary." [AR 27.]

Thus, the ALJ summarized Plaintiff's symptom testimony and then proceeded to engage in a detailed explanation of why both the medical record *and* Plaintiff's reported high level of functioning are inconsistent with her statements about the intensity, persistence, and limiting effects of his pain. [*See* AR 20-27.] It is clear from the opinion as a whole that the ALJ thoroughly considered Plaintiff's testimony, found Plaintiff's daily activities as *one* reason the record does not support the severity of Plaintiff's alleged symptoms, and accordingly concluded Plaintiff was not as limited prior to the DLI as alleged. [AR 27]; *see also Dewey v. Colvin*, 650 Fed. App'x 512, 514 (9th Cir. 2016) ("Claimant performed a full range of daily activities – including attending college full time – that were inconsistent with his subjective complaints, he improved when he used behavior modification

techniques, and the objective medical evidence showed that he was not as limited as he claimed."). As such, the ALJ's assessment of Plaintiff's daily activities was another appropriate basis to discount her subjective asserted limitations. *Id.*

### ii. Conservative Treatment

The ALJ also discounted Plaintiff's subjective complaints because – other than her cervical spine surgery shortly after the DLI – she generally received conservative treatment for her back and neck in the form of pain medication, physical therapy, and injections. [AR 26.] Plaintiff contends that the ALJ erred in discounting her testimony on that ground because receipt of multiple steroid injections is not conservative treatment. [Dkt. No. 11 at 7 (citing *Huerta v. Astrue*, 2009 WL 2241797, at *4 (C.D. Cal. July 22, 2009)) (finding the ALJ erred in characterizing multiple steroid injections as conservative treatment).] The Court agrees that the ALJ erred in finding Plaintiff's receipt of multiple spinal injections qualified as conservative. *See e.g. Joyce A. A. v. Saul*, 2021 WL 1546956, at *3 (C.D. Cal. Apr. 20, 2021) ("Given Plaintiff's repeated injections, pain medication, and physical therapy and acupuncture during the relevant period, the Court cannot conclude that Plaintiff received conservative treatment); *Tagle v. Astrue*, 2012 WL 4364242, at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative, epidural and trigger point injections are not."); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (although treatments such as narcotics and trigger point injections "may not be the most aggressive available, like surgery, for example, they are certainly not what the Court would categorize as conservative."). However, any error is harmless because the ALJ provided two other legitimate reasons, supported by substantial evidence, for discounting Plaintiff's testimony. *Molina*, 674 F.3d at 1115.

In sum, the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony. *Trevizo*, 871 F. 3d at 675. Under the relevant standard of review, "[i]f the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, th[is] court may not substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). As such, the Court finds substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom testimony. *Molina*, 674 F.3d at 1110.

### IV. Conclusion

Accordingly, for all the reasons stated above, the Court finds that the ALJ's decision does not show legal error and is supported by substantial evidence. It therefore is affirmed. A separate judgment will issue.

Dated: October 19, 2023

_____
Patricia Donahue
UNITED STATES MAGISTRATE JUDGE

10